UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

JOHN MADIGAN,
    Plaintiff

v.

GENERAL STAR INDEMNITY CO.,
    Defendant

CIVIL ACTION NO.: 04-CV-12665-DPW

**BRIEF IN SUPPORT OF PLAINTIFF'S
MOTION FOR SUMMARYJUDGMENT**

A.    INTRODUCTION

Determination of this motion for summary judgment and of the cross motion which will follow, depends upon the method of analysis chosen by the court to apply to the term "arising out of" in General Star's Independent Contractor's Exclusion. It reads:

> In consideration of the reduced premium charged, it is hereby understood and agreed that this policy does not apply to Bodily Injury or Property Damage arising out of operations performed for the named insured by Independent Contractors or acts or omissions of the named insured in connection with his general supervision of such operations.

John Madigan does not deny that his presence at the premises of General Star's insured, Industrial Rents, LLC, directly flowed from his status as an independent contractor or employee thereof, but maintains that his injury arose not out of "operations performed for the name insured" but from his mere presence in an unsafe area, the dangers of which Industrial Rents personnel knew or had reason to know. Put simply, Mr. Madigan plummeted 20 feet or more because he was situated on rotted wood. He happened to be there in the course of doing a roofing job. He could as easily have been there because he was a building inspector. The

1

mechanism of injury was independent from the type of operation in which he was involved and independent from any supervisory issue or OSHA violation. Were liability against Industrial Rents asserted on the basis of lack of scaffolding or the like, then coverage under the General Star policy clearly would be excluded. Liability, however, is asserted on the more general breach of duty to provide a safe site and warn of known dangers.

If the Court determines that Mr. Madigan's mere presence on the roof while in his capacity as a roofer is sufficient to satisfy the "arising out of" requirement, then judgment for the insurer must follow. If the Court analyzes the mechanism of injury, however, instead of looking merely at Mr. Madigan's employment status, then it should determine that his injuries arose independently from the operation being "performed by" the independent contractor. They arose simply because the roof was dangerously rotted. Plaintiff could have been sunbathing on the roof and he would have dropped with the decayed structure. Hence, the injuries derived separately from the roofing operation, and the exclusion is inapplicable.

Plaintiff recommends an analysis that looks at the actual mechanism of injury, similar to the two part "particular activities" test espoused in Pettinato v. Cigna Prop. & Cas. Co., 303 N.J. Supra 576, 697 A.2d 330 (1997) in applying a business pursuit exclusion in a liability policy. There the Court first determined whether the injury arose within the context of the insured's business pursuit, then scrutinized the particular activity causing injury to determine whether it was of the type ordinarily incident to a non-business pursuit and therefore outside the exclusion.

B.  IN THE ABSENCE OF CASES DIRECTLY ON POINT IN THIS JURISDICTION, A REVIEW OF CASES ADDRESSING THE "ARISING OUT OF" PHRASE IN OTHER SITUATIONS MILITATES IN FAVOR OF COVERAGE HERE.

Neither the first circuit nor the Massachusetts appellate courts have issued decisions construing an exclusion such as the one at issue in this case. In general, the term "arising out of"

2

indicates a range of causation wider than the concept of proximate cause in tort law and narrower than what would be included in a "but for" analysis. Ruggerio v. National Grange Ins. Co., 430 Mass. 794, 724 N.E. 2d 295 (Mass. 2000); Rischitelli v. Safety Insurance Co., 423 Mass. 703, 671 N.E. 2d 1243 (1996). How the Courts have applied this necessarily vague continuum in known contexts is thankfully more instructive than is articulation of the standard. In Rischitelli, the Supreme Judicial Court had to determine whether injuries from a road-rage assault following a two car collision arose out of the use of a vehicle. (That the injuries were not "accidental" would not have barred coverage under the unique terms of the Massachusetts compulsory portion of bodily injury liability insurance). Conceding that "In the last analysis, the Court must make a judgment call," it disallowed benefits because, "The battery of the plaintiff was sufficiently independent of the motor vehicle accident that the losses that the plaintiff sustained arose from the intentional wrongdoing of the other driver and not from the use of an automobile." Id. at 707. In Ruggerio, an ambulance dispatched to the underlying claimant's home was involved in an accident, delaying arrival. By the time a second ambulance reached the patient, he had stopped breathing and died in transport. The Court found the relationship between the decedent's death and the first ambulance's accident too attenuated to trigger coverage under a motor vehicle policy on the ambulance. In Sabatinelli v. Travelers Ins. Co., 369 Mass. 674 (1976), the insured, while seated in his stationary auto, shot a pedestrian. In refusing to open up auto liability insurance, the Court noted the lack of a causal nexus between the use of the vehicle and the injury. In other words, the tortfeasor's mere presence in the automobile was not enough to have made the injuries inflicted by him "arise out of" the use of the vehicle. Similarly, and in a situation involving negligence as opposed to intentional behavior, the Court found that a store employee's closing of a car door on a customer's fingers while putting groceries into the car was,

" 'too casual and too remote from the operation of the vehicle' to constitute 'use' for purposes of coverage." Travelers Ins. Co. v. Safeguard Ins. Co., 346 Mass. 622, 624 (1964) as discussed in Tae v. Tae, 57 Mass. App. Ct. 297, 300 (2003).  In Tae v. Tae, the insured emptied gasoline directly from his car's tank into a bucket, then entered the apartment where his girlfriend was staying and committed self immolation near a gas stove.  The stove ignited, and a massive fire ensued causing a second death and severe injuries to some children.  Conceding that the expression "arising out of" covers a wider range of causation than the concept of proximate causation, the Court deemed the victims' injuries insufficiently dependent on the defendant's use of his auto to say it arose out of such use to trigger coverage under the auto insurance policy.

In cases where coverage has been found to have arisen out of the use of a vehicle in non-obvious situations, there has always been a direct causal nexus between the vehicle's manner of use and the covered injury.  In Assetta v. Safety Ins. Co., 43 Mass. App. Ct. 317 (1997) a bottle thrown from a moving vehicle was found to have its speed and trajectory affected by the vehicle so that the impact with the ultimate target was magnified.  In White v. American Casualty Ins. Co., 53 Mass. App. Ct. 66 (2001), the honking of a car horn excited a dog sufficiently to result in a dog bite injury.  In Metropolitan Prop. & Cas. v. Santos, 55 Mass. App. Ct. 789, rev. den. 438 Mass. 1104 (2002), a person claiming bodily injury liability coverage was injured by a fish tote (a hard plastic container weighing some 100 pounds) being slung with the use of a hydraulic lift from a dock onto the bed of the putative tortfeasor's pick-up truck.  The accident was found to have fallen within the range of causation encompassed by the concept of "arising out of" where the victim was standing by the tailgate and actually engaged in the tote loading operation.

No such causal nexus applies in Mr. Madigan's case.  He was injured not by any mechanism of the roofing operation in which he was engaged, but by virtue of his merely being

in the wrong place at the wrong time. His actual work at the time did not add to the circumstance of the roof being too rotted to support his weight.

The Massachusetts Courts have construed the term "arising out of" in context other than auto coverage. In Commerce Ins. Co. v. Finnell, 41 Mass. App. Ct. 701 (1996) the Appeals Court was called upon to determine whether injury to a child being baby-sat by Finnell arose out of a business pursuit of the insured, for which coverage was excluded. Finnell regularly baby-sat the child on a daily basis and did not dispute that she was operating a business. She had placed a bowl of boiling water into a bowl on a table, then left the kitchen momentarily. Her four year old charge chose that moment to put his hand in the bowl and scald it. The Court noted that Ms. Finnell's business was to care for the child and prevent him from being harmed. Therefore, despite Finnell's argument that the injury resulted from her actions in preparing her own lunch, the injury arose from the business pursuit of babysitting and coverage was barred by the business use exclusion. In Bagley v. Monticello Ins. Co., 430 Mass. 454 (1999) a battery and rape victim who had sued the motel where the incident occurred. The SJC denied coverage under an exclusion which read, "All coverage is excluded hereunder for any claims which arise wholly or in part out of allegations of violation of any federal, state or local statute, ordinance or law." Bagley had contended that the motel was liable for negligent security and for negligently serving liquor to the eventual rapist. The Court found it clear that plaintiff's emotional and physical injuries had far more to do with her being a victim of a brutal rape and assault and battery, than they had to do with any negligence by motel employees. Because they arose from criminal conduct, the exclusion applied.

Finally, the First Circuit Court of Appeals has addressed the "arising out of" language, applying Massachusetts law in the context of an additional insured endorsement, in Merchants

<u>Ins. Co. of NH, Inc. v. U.S.F. & G. Co.</u>, 143 F.3d 5 (1st Cir. 1998). There, D'Agostino Associates, Inc. contracted to replace a bridge. It subcontracted with Great Eastern Marine Service, and required Great Eastern to add D'Agostino to Great Eastern's liability policy through U.S.F. & G. Hence, D'Agostino was covered by U.S.F. & G., "but only with respect to liability arising out of [Great Eastern's] work for [D'Agostino] by or for you [Great Eastern]." Great Eastern's aptly named employee, Woundy, was injured when a D'Agostino employee caused Woundy's arm to be pinned between two pieces of demolition equipment. U.S.F. & G. declined to contribute to the defense or indemnification of D'Agostino, contending that Woundy's injury did not arise out of Great Eastern's work because D'Agostino's employee was the tortfeasor. The Court of Appeals easily dispatched U.S.F. & G.'s arguments. "Woundy's injury 'arose out of' Great Eastern's work in the sense that the harm occurred while he was cutting and removing a section of the bridge, a task that was assigned to Great Eastern in the Sherman's Bridge Project. Under an intermediate causation test, … D'Agostino's liability 'arose out of' Great Eastern's work for D'Agostino. More than 'but for' causation existed." <u>Id</u> at 9. Of extreme significance to Mr. Madigan's claim, however, the Court went on to add, "It was not simply because the two companies happened to be working in the same location that Woundy was injured by a D'Agostino employee; rather the injury was a consequence of the work that Great Eastern was performing." <u>Id</u> at 9-10. Again, we see the distinction that mere presence as a consequence of work is not enough to meet the test. There must be a nexus between the work and the injury. Mr. Madigan's injury would have occurred, and did occur, regardless of what he actually was doing. The liability of Industrial Rents is founded upon not the operation of the roofing company, but the failure of Industrial Rents to guard or warn of a dangerous condition to which it was alerted before the roofing job commenced.

Whether an injury arises out of a factor governing coverage generally depends upon whether one can separate the injury from that factor. In Rischitelli and Sabatinelli for example, the injuries clearly were divorced from the auto itself, and coverage was disallowed. In Bagley, the injuries could not be divorced from the criminal acts of the primary tortfeasor, so that they could not escape the exclusion for injuries arising from illegal acts. In Finnell, a child's injury could not be divorced from the gap in supervision which was part of a business pursuit for which coverage was excluded. In Merchants v. U.S.F. & G., Woundy's injury could not be divorced from the work he was performing at that moment. In contrast, the injury to Mr. Madigan did not depend at all on what he was doing except being there.

C. CASES FROM OTHER JURISDICTIONS ANALYZING WHETHER INJURIES HAVE ARISEN OUT OF INDEPENDENT CONTRACTOR OPERATIONS TEND TO FAVOR COVERAGE IF POSSIBLE WITHIN THE ANALYTICAL FRAMEWORK ALLOWED BY THE JURISDICTION.

Independent contractor's exclusions have received some attention in other jurisdictions, predominantly in New York. In U.S. Underwriters Ins. Co. v. Congregation Kollel Tisereth, TZVI, 2004 WL 2191051 (E.D.N.Y. 2004), (F. Supp. cite not available), injury to a demolition subcontractor was ruled to be excluded from coverage when a wall fell on him at the construction site. It is not clear from the factual recitation in the case exactly what the injured person was doing, or how his behavior may or may not have contributed to the accident. In any event, it would not bear on an analysis of the instant case because New York applies a different analysis to "arising out of". As explained by the Federal Court in U.S. Underwriters v. Congregation Kollel, the New York Court of Appeals has held that the "arising out of" phrase must be "applied broadly in the form of a 'but-for' test in determining coverage," citing Mount Vernon Fire Ins. Co. v. Creative Hous. Ltd., 88 N.Y. 2d 347, 350; 645 N.Y.S. 2d 433; 668 N.E.

7

2d 404, 405 (1996). Massachusetts, on the other hand, construes "arising out of" more broadly than proximately caused by, but less broadly than would be encompassed by a but-for test. Tae v. Tae, 57 Mass. App. Ct. 297; Rischitelli v. Safety, 423 Mass. 703. Significantly, in U.S. Underwriters Ins. Co. v. Weatherization, Inc., 21 F. Supp. 2d 318 (S.D.N.Y.) 1998, New York's expansive definition did not save the insurer from an obligation to defend its insured in circumstances involving the exact same Independent Contractor's Exclusion as is involved in Industrial Rent's policy through General Star Indemnity. The underlying complaint primarily made allegations against U.S. Underwriter's insureds, Vaij and Garth, revolving around their role in approving the hiring of independent contractor, Weatherization. For reasons not explained in the decision, the duty to indemnify was not at issue, but in affirming the duty to defend, the Court stated:

> Here…the state complaint includes allegations that fall outside the Independent Contractor's Exclusion. The state complaint not only alleges that the resulting damages were due solely to the carelessness, recklessness and negligence of defendants, individually and acting in concert, but further that this breach of defendants' duties was in relation to the "maintenance, management, control, supervision, inspection, alteration, renovation and/or repair of the third floor of the premises." Because these allegations clearly fell outside the Independent Contract Exclusion, the Court rejects plaintiff's argument that this exclusion applies.

Id. at 321. Similarly, the liability claim against Industrial Rents directly went to its own duties of maintenance and inspection separate and apart from operations by subcontractors. (See discussion of the general duty to maintain safe premises under the portion of this brief addressing specifically the duty to defend).

In the same vein as U.S. Underwriters v. Weatherization, Inc., the collapse of a brick wall caused property damage resulting in a claim against a general contractor in Texas United Ins. Co. v. Burt Ford Enterprises, Inc., et al, 703 S.W. 2d 828 (1986). The insurer, standing upon the

8

wording of its Independent Contractor Exclusion, which was the same as the one upon which General Star relies in this case, refused defense and indemnification because it appeared that the damage was caused by a co-defendant, one Smotherman, an independent contractor of Burt Ford's. The Texas Court of Appeals denied the Insurer's motion for summary judgment because in the underlying tort suit, the plaintiff's petition charged Ford himself with negligence. The complaint simply alleged negligence on the part of "the defendants" (Burt Ford and Smotherman), and did not distinguish the basis for liability against each defendant separately. The holding, therefore, necessarily entails a narrow application of the "arising out of" language, because the complaint in the underlying tort suit, to the same extent that it blamed the insured, Burt Ford, attributed blame hand in hand to the independent contractor Smotherman.

In contrast, John Madigan's claim of liability against Industrial Rents is much less expansive than the claim against Burt Ford. It is independent of any facts that include conduct relating to the independent contractor's roofing operation other than the mere presence of independent contractor Bowzer or his employees including Madigan. Under the policy construction applied in the above cited out-of-state jurisdictions, summary judgment for John Madigan against General Star would be mandated.

D.  GENERAL STAR SHOULD HAVE HAD NO REASONABLE QUESTION THAT IT HAD A DUTY TO DEFEND ITS INSURED, INDUSTRIAL RENTS.

The paucity of case law directly on point with respect to the Independent Contractor Exclusion, in and of itself, should have alerted General Star of its obligation to defend Industrial Rents, LLC. In Ruggerio v. National Grange, 430 Mass. 794 (2000), the Supreme Judicial Court found National Grange liable for defense costs although the underlying claim against its insured was determined not to have arisen out of motor vehicle use.

9

> In Massachusetts, an insurer has a duty to defend an insured when the allegations in a complaint "are 'reasonably susceptible' of an interpretation that they state or adumbrate a claim covered by the policy terms" (citations omitted). Liberty Mut. Ins. Co. v. SCA Servs., Inc., 412 Mass. 330, 332, 588 N.E. 2d 1346 (1992). See Simplex Techs., Inc. v. Liberty Mut. Ins. Co., 429 Mass. 196, 199, 706 N.E. 2d 1135 (1999). "It is axiomatic that an insurance company's duty to defend is broader than its duty to indemnify… [T]he duty to defend is based on the facts alleged in the complaint and those facts which are known by the insurer." Boston Symphony Orchestra, Inc. v. Commercial Union Ins. Co., 406 Mass. 7, 10-11, 545 N.E. 2d 1156 (1989).

Id. at 796. See also Merchants Ins. of NH v. United States Fidelity and Guaranty, 143 F. 3d 5 (1st. Cir. 1998). The complaint in the state court action against Industrial Rents alleged negligence for failure to provide a safe workplace, negligence for failure to warn of a danger not readily apparent to plaintiff, and strict liability under a Massachusetts statute governing building code violations (G.L. 143, §51). The complaint charged Industrial Rents with negligence not derivative of Mr. Madigan's status as an independent contractor or employee thereof, and, in part, not derivative of a duty relating to supervision of the job. Massachusetts courts have distinguished between liability founded in retention of a supervisory capacity and liability for common law negligence for breaching the general duty to maintain reasonable safe premises and warn of dangers known or which should have been known to the landowner. See Corsetti v. Stone, 396 Mass. 1 (1985) and St. Germaine v. Pendergast, 411 Mass. 615 (1992) in which general contractors argued against being assessed with liability grounded in the control which they may have maintained in supervising independent contractors, but conceded the common law duty of an owner to maintain property in a safe condition or warn of dangers. See also Mounsey v. Ellard, 363 Mass. 693 (1973); Polak c. Whitney, 21 Mass. App. Ct. 349 (1985); Briggs v. Taylor, 397 Mass. 1010 (1986) regarding the general duty of landowners. That the complaint may have triggered liability for which coverage ultimately would be excluded under the Independent Contractors Exclusion, or contained allegations some of which would not have been

10

covered by General Star, is not enough to support a denial of defense. Dilbert v. Hanover Ins. Co., 63 Mass. App. Ct. 327, 331 (2005); Texas Mutual Ins. Co. v. Burt Ford Enterprises, Inc., 703 S.W. 2d 828 (C.A. Texas 1986); U.S. Underwriters Ins. Co. v. Weatherization, Inc., 21 F. Supp. 2d 318 (S.D.N.Y. 1998); Bucci v. Essex Ins. Co., 393 F.3d 285 (1st Cir. 2005) (finding duty to defend under Maine law against club patron attacked outside of insured's nightclub, despite A&B exclusion).  If it is reasonably possible that the policy may be construed to cover the claim, defense by the insurer is required. Ruggerio v. National Grange Ins. Co., 430 Mass. 794, 796.

## CONCLUSION

For the above reasons, the General Star Indemnity liability policy covering Industrial Rents should be determined to have required a defense of and indemnification of Industrial Rents relative to John Madigan's tort claim.

                                        Respectfully submitted
                                        JOHN MADIGAN
                                        By his attorney,

                                        /s/ Michael C. Najjar
                                        Michael C. Najjar, Esq., BBO#: 366740
                                        Marcotte Law Firm
                                        45 Merrimack Street, Suite 410
                                        Lowell, Massachusetts 01852-1776
                                        (978) 458-1229

Dated:   May 13, 2005